**E-FILED**
Friday, 24 June, 2005  03:02:16 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

JOHNNIE LEE SAVORY II,         )
                                     )
        Plaintiff,           )
                                     )     Case No. 05-2082
                  v.              )
                                     )
KEVIN W. LYONS, et al.        )
                                     )

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, Johnnie Lee Savory II, by and through his attorneys, responds to Defendant Kevin W. Lyons' Motion To Dismiss And Alternative Motion For More Definite Statement and to Defendant Gary Poynter's and City of Peoria's Motion to Dismiss as follows:

### INTRODUCTION

Ever since he was first tried for the murders of James Robinson and Connie Cooper, Johnnie Savory has suffered from unfair and unconstitutional treatment at the hands of state actors.  Defendants do not deny that DNA analysis could prove or disprove Mr. Savory's long-asserted claim of innocence, yet they unjustly refuse to allow Plaintiff access to biological evidence for objective testing that serves only the interest of truth.  Because Defendants' actions are arbitrary and violate Mr. Savory's constitutional rights, he brings this Section 1983 action.

Mr. Savory's original conviction was reversed because of the taint of an improperly obtained confession.  Upon retrial, the prosecutor negatively commented on Mr. Savory's initial refusal to talk to police, an outrageous act that state and federal courts agreed rendered the second trial constitutionally defective.  Yet both state and federal courts upheld the conviction, finding the State's errors "harmless beyond a reasonable doubt."  While the state court focused exclusively on alleged admissions to third parties, the Seventh Circuit rooted its harmless-error analysis on the physical evidence in the case -- a knife allegedly belonging to Mr. Savory with

trace amounts of blood, hairs microscopically matched to Mr. Savory found at the scene, and pants taken from Mr. Savory's residence containing blood consistent with the victim -- which the court found to be "damning" and "corroboration" of guilt.  By this action, Mr. Savory seeks release of these precise items of physical evidence that the Seventh Circuit found so critical to the perpetrator's identity.  Modern DNA testing can now prove whether the constitutional errors in Mr. Savory's second trial truly were harmless or whether, in fact, the errors helped convict an innocent man.  For the reasons outlined below, the grounds for dismissal have no merit and the Defendants' motions should be denied.

## STATEMENT OF FACTS

As set forth more fully in Plaintiff's complaint, this action concerns the Defendants' refusal to provide Mr. Savory, for the limited purpose of DNA testing *at his own expense*, access to the very evidence used to link him to the crime and thereby convict him.  (Complaint ¶¶ 1, 9, 46.)

On January 18, 1977, James Robinson and Connie Cooper were found dead in their home in Peoria, Illinois.  (Complaint ¶ 10.)  A week after the murders, the police investigation turned its focus to Johnnie Savory -- a friend of James Robinson who had coincidentally been at the Robinson house the day before the murders.  After locating Mr. Savory at junior high school, the police interrogated him almost continuously for the next day and a half, not stopping until Mr. Savory allegedly confessed to the crime.  (Complaint ¶¶ 10, 12.)  Even after long hours of interrogation, Mr. Savory refused to affirm to the alleged confession.  (Complaint ¶ 12.)

Mr. Savory was initially tried and convicted in June 1977.  (Complaint ¶ 11.)  In 1980, the Illinois Appellate Court reversed the conviction after determining that the confession allegedly made by the then 14 year-old-child was involuntary and contrary to the *Miranda* rule. (Complaint ¶ 11; *People v. Savory*, 82 Ill.App.3d 767 (3rd Dist. 1980).)  Without the alleged

confession, prosecutors publicly admitted that they had no case against Mr. Savory. Despite public these public pronouncements, Mr. Savory was again subjected to a second trial and conviction in 1981. (Complaint ¶¶ 11, 13.)

The fundamental issue at both of Mr. Savory's trials was identity -- whether it was Mr. Savory or some other individual who actually murdered Robinson and Cooper. Evidence connecting Mr. Savory to the crime was extremely thin. Without a single eye witness, the prosecution's entire case linking Mr. Savory to the Robinson home on January 18, 1977 consisted of: (1) the testimony of three of Mr. Savory's friends -- Frank, Tina, and Ella Ivy -- that Mr. Savory had made inculpatory statements to them; (2) evidence that during his interrogation Mr. Savory exercised his right to remain silent; (3) evidence that hair found at the scene was "similar" to Mr. Savory's hair; (4) evidence that Mr. Savory or his father may have owned a pocket knife that may have had trace amounts of blood; and (5) evidence that a pair of blue pants allegedly worn by Mr. Savory had a small bloodstain of the same blood type as the female victim. (Complaint ¶ 18.)

After his second conviction, Mr. Savory appealed to the Illinois Appellate Court. (Complaint ¶ 14.) The Illinois Appellate Court determined that prosecutor's improper comments on Mr. Savory's election to remain silent, and the introduction of additional custodial statements made without the benefit of *Miranda* warnings, constituted constitutional error. (Complaint ¶ 19; *People v. Savory*, 435 N.E.2d 226 (2nd Dist. Ill. App. Ct. 1982).) The court, however, determined that these errors were harmless. (*Id.*)

Mr. Savory then sought habeas corpus relief in the United States District Court for the Northern District of Illinois, which was denied in July of 1985. (Complaint ¶¶ 16, 17, *Savory v. Lane*, 1985 WL 2108 (N.D.Ill. 1985).) On appeal, the Seventh Circuit agreed that commentary

on Mr. Savory's election to remain silent and admission of custodial statements constituted

constitutional error.  (Complaint ¶ 17; *Savory v. Lane*, 832 F.2d 1011, 1017-18).)  The Seventh

Circuit rejected the Illinois Appellate Court's harmless error analysis and conducted its own

review of the evidence presented at the case.  (*Id.*)  While it ultimately found the constitutional

errors harmless, the Seventh Circuit relied heavily on the physical evidence introduced at trial,

finding it "damning" and providing necessary corroboration for suspect testimony of the

witnesses presented against Mr. Savory.  (Complaint ¶ 17, *Savory v. Lane*, 832 F.2d at 1020.)  In

this action, Mr. Savory seeks access to this very evidence.

Among the evidence Mr. Savory seeks access for testing are:

- Blood-stained pants.  The state alleged they had the same "Type A" blood as one victim, but they could not be tested to definitively exclude other potential sources.
- Hairs found at the crime scene.  The state alleged these hairs matched Mr. Savory using microscopic visual analysis.  DNA analysis could exclude Mr. Savory as the source.
- A knife the state alleged contained trace amounts of blood, and might today be tested to determine if the blood is linked to one of the victims.
- Hair found in the victim's hands, which could identify the perpetrator.
- Fingernail scrapings collected from the victims, which could identify the perpetrator.

If tested using the latest advances in DNA technology, this evidence could provide definitive

answers regarding Mr. Savory's guilt or innocence, and thereby further the interests of justice,

and the genetic profile could be placed in state and national DNA databanks in order to

apprehend the real perpetrator.

## ARGUMENT

In evaluating motions to dismiss, all of plaintiff's allegations are accepted as true, and are

viewed in light most favorable to the nonmoving parties.  *Cole v. U.S. Capital, Inc.*, 389 F.3d

719 (7th Cir. 2004).  It is improper to grant a motion to dismiss unless the complaint sets forth no

grounds on which the requested relief can be granted.  *Id.*

I.     **Mr. Savory's Request for DNA Testing Is Properly Brought Under Section 1983
        Because, Even If Successful, It Would Not Necessarily Imply The Invalidity Of His
        Sentence Or Conviction.**

        Although Mr. Savory "seeks only DNA testing and does not challenge either the fact or

the length or his incarceration" (Complaint ¶1), Defendants assert that dismissal is appropriate

under the so-called *Heck* doctrine.  (Memorandum of Law in Support of Peoria Defendants'

Motion to Dismiss ("Peoria") at 3-5; Memorandum of Law in Support of Kevin Lyons Motion to

Dismiss and Alternative Motion to Strike ("Lyons") at 2-4.)  The Peoria Defendants concede that

it is "technically correct" that granting relief will not necessarily imply the invalidity of Mr.

Savory's conviction, but nonetheless urge dismissal because Mr. Savory seeks testing "in the

hope that it will establish that he did not commit the murders."  (Peoria at 4.)  In a contradictory

approach, Lyons maintains that release of evidence for DNA testing would "necessarily

invalidate" Mr. Savory's conviction because, apparently, DNA testing "would only be

appropriate if the proceedings leading to conviction had been in violation of Plaintiff's

constitutional rights."  (Lyons at 3.)  In light of both logic and recent United States Supreme

Court precedent, these arguments fail and should be rejected.

        Initially, it bears repeating that the only *inevitable* consequence of success in this action

would be release of evidence to a laboratory for DNA testing.  If testing is ordered, Mr. Savory's

Section 1983 action will terminate.  All other consequences of success are contingent.  The

laboratory may fail to obtain DNA test results.  If results are obtained, they could further

inculpate Mr. Savory.  (*See* Lyons at 9.)  If, on the other hand, exculpatory results are obtained,

Mr. Savory will have to proceed via a new action -- potentially in state or federal court, or via an

application for executive clemency -- to secure his release from prison.  Thus, it cannot be

literally said that "success in [this] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, __ U.S. __, 125 S.Ct. 1242, 1248 (2005) (summarizing prior precedent).

While the Peoria Defendants concede that Mr. Savory is not "technically" barred under the necessary-implications test, they urge dismissal on the theory that DNA testing is step in the direction of proving innocence, which Mr. Savory hopes will lead to the vacatur of his conviction. (Peoria at 4.) Of course, Defendants cannot articulate a basis in Supreme Court precedent for a test based on the subjective or long-term aspirations of a Section 1983 plaintiff. Instead, they cite to non-binding case law from the Fourth and Fifth Circuits -- *Harvey v. Horan*, 278 F.3d 370 (4th Cir. 2002) ("*Harvey I*") and *Kutzner v. Montgomery County*, 303 F.3d 339 (5th Cir. 2002). However, both of these cases were decided before the Supreme Court made clear that the necessary-implications test, and its focus on objective inevitable consequences, strictly governs this area of Section 1983 law. That decision squarely controls the issue here.

In *Dotson*, decided this term, the Supreme Court considered whether prisoners in Ohio could bring a challenge to parole procedures via Section 1983. The state of Ohio argued that a Section 1983 action was barred since the inmates brought the action "only because they believe that victory on their claims will lead to speedier release from prison," which makes the lawsuits "in effect" a collateral attack on the duration of their confinement. *Dotson*, 125 S.Ct at 1245-46. The Court, however, rejected this argument based on the subjective intent of the prisoners and criticized the logical "jump from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief)." *Id.* at 1246. The Court held that a Section 1983 action was proper because "[s]uccess for Dotson does not mean immediate release from confinement or a shorter stay in

prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application." *Id.* at 1248 (emphasis in original). The Court concluded that Section 1983 actions, where "success on respondents' claims would not inevitably lead to release" do not lie at the "core of habeas corpus." *Id.* (internal quotations omitted).

The analogy between the present case and *Dotson* is obvious. Release of biological evidence for DNA testing will not inevitably lead to Mr. Savory's release from prison. In fact, Mr. Savory is at least one step further removed from securing a platform from which release can be sought than are the plaintiffs from *Dotson*. In that case, success on the 1983 action brings the plaintiffs directly to a parole hearing, where the parole board can immediately order their early release. *Dotson*, 125 S.Ct. at 1248. In contrast, even if Mr. Savory prevails in this action, and is allowed to proceed with testing at his own expense, the next step is the laboratory test. If the tests fail to produce exculpatory results, his efforts are over. However, even if the tests produce exculpatory results, Mr. Savory still must initiate a separate action for relief, wherein a different court would *consider* his application and where no particular outcome is guaranteed. In sum, success in this action will not *necessarily* implicate his conviction and so Section 1983 is proper. *See also, Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct 2117, 2124 (2004) ("we were careful in *Heck* to stress the importance of the term 'necessarily.'") (citing *Heck v. Humphrey*, 512 U.S.477, 487 (1994); *Harvey v. Horan*, 285 F.3d, 298, 308-10 (4th Cir. 2002) ("*Harvey II*") (Luttig, J. concurring)).

Defendant Lyons actually cites *Dotson* and so relies on a strikingly different *Heck* theory. Lyons asserts that success on plaintiff's claims "would necessarily invalidate his conviction" because "the relief requested would only be appropriate if the proceedings leading to conviction had been in violation of Plaintiff's constitutional rights." (Lyons at 3.) This argument makes no

sense, as its conclusion does not follow from its entirely circular premise.  It is simply not true

that the relief requested (release of evidence for DNA testing) would only be appropriate if the

underlying conviction suffered from constitutional error.  Mr. Savory maintains that the federal

right to DNA testing exists independent of other constitutional guarantees.  In other words, even

a defendant who had a constitutionally sound trial may have a right to DNA testing.  Moreover,

Lyons' faulty premise still does not explain how the release of evidence will necessarily

implicate Mr. Savory's conviction.  Release of evidence alone will not invalidate previous court

decisions finding "harmless" the constitutional errors that occurred in Mr. Savory's trial.  Even if

exculpatory results obtained, they still must be presented anew to a different court before Mr.

Savory's sentence could be affected.  Section 1983 is therefore proper.[1]

## II.     Mr. Savory's Right To Access Evidence For DNA Testing Is Found In Mr. Savory's Substantive And Procedural Due Process Rights, Mr. Savory's Right Of Access To The Courts, And Other Constitutional Provisions.

In his motion Lyons denies the existence of any constitutionally based right of access to

evidence for postconviction DNA testing.  (Lyons at 8-12.)  While the Peoria Defendants do not

generally dispute the existence of this right, they maintain that it does not derive from the Eighth

Amendment.  (Peoria at 5-6.)  Despite Defendants' protests, the totality of constitutional

protections afforded a criminal defendant in order to guarantee a fair trial and prove his

innocence do support the existence a federal right of access to evidence for postconviction DNA

testing.

---

[1] Since Lyons offers no credible argument for why Mr. Savory's action should be barred as cognizable only under habeas, his related arguments (1) that Mr. Savory's claims pursuant to §2254 are barred for failure to exhaust state remedies; (2) that Mr. Savory's claims are successive habeas corpus petitions filed without leave of court; and (3) that the Warden of the Dixon Correctional Facility is a necessary party, which all rely on procedural requirements associated with habeas corpus, have no merit.

Although the particular right of access sought by Mr. Savory has not been the subject numerous judicial decisions, well respected jurists and scholars agree that the right exists based on the "law's foundational concern for the determination of guilt and innocence." *Harvey II*, 285 F.3d at 306. (Luttig, J.) Perhaps the most thorough and persuasive analysis of the sources for this right comes from Judge Luttig in his concurrence in *Harvey II*.[2] In his opinion, Judge Luttig initially locates the right in the constitutionally protected liberty interest to pursue freedom after conviction. *Harvey II*, 285 F.3d at 313. Moreover, though it does not lie *exclusively* in recognized rights of procedural due process, substantive due process, or the rights attendant a innocent prisoner, Judge Luttig explains that Mr. Savory's right of access draws from the protections inherent in each of these rights, and from principles of fundamental fairness. *Id.* at 313-20. Other scholars agree that the arbitrary denial of access to evidence for postconviction DNA testing violates a host of important constitutional norms. *See*, *e.g.*, Seth F. Kreimer & David Rudovsky, *Double Helix, Double Bind: Factual Innocence and Postconviction DNA Testing*, 151 U. Pa. L. Rev. 547 (2002).

As explained more fully below, existing precedent of the Supreme Court supports a right to DNA testing rooted in multiple constitutional doctrines: (1) in the procedural due process right to access to exculpatory evidence originally recognized in *Brady v. Maryland*; (2) in the substantive due process right to be free from arbitrary government restrictions on life, liberty or

---

[2] In *Harvey II*, the Fourth Circuit declined to afford *en banc* review of the *Harvey I* decision, which had found Harvey's Section 1983 action for postconviction DNA testing barred by the *Heck* doctrine. The Court declined to revisit its decision because the issue had since been mooted due to the passage of a postconviction DNA testing statute in Virginia, which was going to provide petitioner with a state remedy to secure DNA testing. *See Harvey II*, 285 F.3d at 298 (Wilkinson, J.) ("The question before us is thus not whether Harvey should or will receive the DNA evidence. He should and he will.") Judge Luttig concurred in the holding, but nonetheless wrote separately to announce that "there does exist such a post-conviction right of access to evidence." *Harvey II*, 285 F.3d at 312.

2:05-cv-02082-MPM-DGB   # 30-1   Page 10 of 39

property; (3) in the right of access to the courts and to petition the government; (4) in the

unconstitutionality of continued confinement of an actually innocent person; and (5) in the right

to seek executive clemency.  Moreover, the asserted right of access is fundamentally consistent

with American traditions of fairness and justice, and finding such a right places no burden upon

the state.

> **A.     Defendant's Refusal To Provide Access To Evidence For DNA Testing
> Violates Mr. Savory's Right To Procedural Due Process.**

Principles of procedural due process provide the first basis for Mr. Savory's right of

access to evidence for postconviction DNA testing.  Despite Lyons suggestion that "no federal

court has yet recognized" it (Lyons at 8), such a due-process right has already been found to

exist.  *Godschalk v. Montgomery County District Attorney's Office*, 177 F.Supp.2d 366, 370.

(E.D. Pa. 2001).  *See also*, *Harvey II*, 285 F.3d at 315-18 (Luttig, J., concurring) (discussing the

basis of a procedural due process post-conviction right of access to evidence ); *Charles v.

Greenberg*, 2000 WL 1838713 at *3 (E.D.La. 2000) (request for access to a rape kit for the

purpose of DNA testing not subject to dismissal for frivolousness).

The Due Process Clause requires that procedures used to deprive someone of life or

liberty must be fundamentally fair and free from arbitrariness.  *Mathews v. Eldridge,* 424 U.S.

319, 334 (1976).  The nature of the due process protection is flexible and each situation calls for

particularized procedural protections to prevent the risk of erroneous decisions.  *Greenholtz v.

Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 12-13 (1979) (citations omitted).

Whether a due process right should exist must necessarily balance the nature of the right a

private individual, the value of the due process safeguard, and the government's interests.

*United States v. Ruiz*, 536 U.S. 622, 631 (2002).  The Supreme Court long ago recognized that

due process requires the state to turn over all exculpatory evidence prior to trial.  *Brady v.

*Maryland*, 373 U.S. 83, 87 (1963). A post-conviction right of access for the purpose of DNA testing is a logical extension of *Brady*.

Recognition of a procedural-due-process right-of-access thus depends upon the application of a balancing test. Under Supreme Court precedent, the constitutionally required level of due process protection is determined by examining (1) the private interest affected by official action, (2) the risk of an erroneous deprivation of such an interest, and (3) the government's interest, including the fiscal and administrative burdens that the procedural safeguard would entail. *Mathews,* 424 U.S. at 335; *see also, Ruiz*, 536 U.S. at 631; *Greenholtz,* 442 U.S. at 12-13.

Clearly, the first and second factors are easily satisfied. The interests of the private individual are great as DNA makes it possible to confirm guilt or innocence after a conviction has been entered. The risk of erroneous deprivation of this interest is also great. The Innocence Project has identified no fewer than 158 individuals in the United States who have been exonerated postconviction by DNA testing since the advent of the technology. *See* http://www.innocenceproject.org/case/index.php (last visited May 2, 2005); *see also,* Edwin Connors et al., *Convicted by Juries, Exonerated by Science: Case Studies in the Use of DNA Evidence to Establish Innocence After Trial* (Nat'l Inst. of Justice, Series No. 161258, 1996), *available at*, http://www.ojp.usdoj.gov/nij/pubs-sum/161258.htm (last visited May 2, 2005). DNA technology is unquestionably more sensitive, discriminating, and accurate than prior forensic testing methods. For this reason, former Attorney General John Ashcroft has observed that "DNA can operate as a kind of truth machine, ensuring justice by identifying the guilty and clearing the innocent." Jonathan Peterson, "*Funds for DNA Testing of Criminals are Diverted*," L.A. Times, Dec. 27, 2001, at A22. In light of the numerous convictions that have been

conclusively determined to be erroneous, it is unconscionable to ignore readily available evidence which, if subjected to testing, could determine whether a miscarriage of justice has occurred.

As far as the third factor in the balancing test, there is no dispute that allowing access to the evidence will not impose a burden on legitimate Government interests, and in fact furthers state interests. Indeed, Defendants have not identified *any* burden resulting from Mr. Savory's request for access. Given that Mr. Savory has volunteered to pay for the testing he requests, any financial burden on the state will be slight, if not non-existent. Rather than creating a burden on the state, testing would further the state's interest in ensuring actual justice, and preventing miscarriages of justice. *See*, *e.g., Brady*, 373 U.S. at 87-88 (describing the state's interests in actual justice).

Lyons' observation that the requested DNA testing may be inculpatory (Lyons at 9) makes no difference to finding a procedural due process right. In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the Supreme Court ruled that, at a minimum, due process required an *in camera* review of files that the prosecution vehemently protested were privileged under state law to determine if they contained material exculpatory evidence. *Ritchie*, 480 U.S. 39. As the Supreme Court noted, "It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment . . . At this stage, of course, it is impossible to say whether any information in the CYS records may be relevant . . ." *Ritchie*, 480 U.S. at 57. Significantly, *Ritchie* recognizes the *Brady* right of a defendant to have evidence examined with no pre-determination that it is exculpatory.

DNA testing is uniquely capable of preventing miscarriages of justice, and preventing

such miscarriages of justice lies at the very heart of the Supreme Court's procedural due process

jurisprudence.  *See United States v. Bagley*, 473 U.S. 667, 675 (1985) (noting that the *Brady* rule

requiring the disclosure of exculpatory evidence exists to ensure that miscarriages of justice do

not occur); *see also, United States v. Agurs,* 427 U.S. 97, 108 (1976) (noting that in *Brady* the

Court rejected the 'sporting theory of justice').  Indeed, suppression of evidence favorable to a

criminal defendant would violate these basic principles regardless of good or bad faith of the

prosecution.  *Brady v. Maryland*, 373 U.S. at 83.  The clear imperative of this jurisprudence thus

favors finding a right of access to evidence for the purposes of testing.  *See Kyles v. Whitley*, 514

U.S. 419 (1995) (*Brady* obligation extended to investigators and other persons working with

prosecutors); *Arizona v. Youngblood,* 488 U.S. 51 (1988) (noting that the State satisfied *Brady*

when it provided untested evidence to defendant's experts for evaluation); *United States v.*

*Agurs,* 427 U.S. at 110-11 ("elementary fairness" requires disclosure of exculpatory evidence

regardless whether it has been requested by a criminal defendant).

## B. Defendant's Refusal To Provide Access To Evidence For DNA Testing Violates Mr. Savory's Right To Substantive Due Process.

Mr. Savory's request for access to evidence is also based in principles of substantive due

process, which prevents the state from arbitrarily denying him the right to conduct objective

DNA testing that could prove (or disprove) his innocence claim.  The due process clause

provides protection to the individual from the "arbitrary exercise of the powers of Government."

*Daniel v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527

(1884) (holding that the Due Process clause "bar[s] certain government actions regardless of the

fairness of the procedures used to implement them"); *County of Sacramento v. Lewis*, 523 U.S.

833, 845 (1988).  The Supreme Court has not decided how extreme conduct must be to violate

substantive due process, but it has stated that "deliberate indifference" is sufficient to violate

substantive due process. *County of Sacramento*, 523 U.S. at 851.

Here, Defendants' refusal to allow access to evidence for DNA testing is shockingly

arbitrary and amounts to a violation of substantive due process. Defendants can identify no state

interest in refusing access to evidence that they are statutorily mandated to maintain until Mr.

Savory completes his sentence. As Judge Luttig notes:

> [I]t could indeed be thought shockingly arbitrary that the
> government would literally dispose of the evidence used to deny
> one of his liberty (if not his right to life) before it would turn that
> evidence over to the individual, when he steadfastly maintains his
> factual innocence and asks only that he be allowed to subject that
> evidence to tests which, it is conceded, given the evidence
> introduced at trial in support of conviction, could prove him
> absolutely innocent of the crime.

*Harvey II*, 285 F.3d at 319-20 (Luttig, J.). These principles of substantive due process mandate

that Mr. Savory be given access to the evidence in his case.

Seventh Circuit precedent supports this conclusion. In *Armstrong v. Squadrito*, 152 F.3d

564, 568 (7th Cir. 1998), the Seventh Circuit determined that the government violates due

process when it turns a blind eye to readily available information that requires an end to custodial

confinement. The plaintiff in *Armstrong* was kept in custody for 57 hours after voluntarily

surrendering under a bench warrant due to the Allen County Sheriff's misfiling of papers and

refusal respond to inquiries regarding his status. *Armstrong*, 152 F.3d at 567. The Seventh

Circuit determined that the conduct of the Sheriff's officers amounted to a conscious disregard of

known and obvious dangers and violated the plaintiff's substantive due process rights.

*Armstrong*, 152 F.3d at 577 (internal citations omitted). The Seventh Circuit has similarly

observed that a policy of maintaining "clandestine files" in which exculpatory information could

be concealed from prosecutors would be violate the constitution.  *Jones v. City of Chicago*, 856 F.2d 985, 996-96 (7th Cir. 1988).

Since DNA testing can prove whether Mr. Savory's long-asserted innocence claim is true, the Defendants' refusal to authorize such testing also amounts to a conscious disregard of a known and obvious danger that a man has been falsely imprisoned.  This clearly violates Mr. Savory's substantive due process rights.  *Armstrong,* 152 F.3d at 577; *see also, Fairley v. Luman*, 281 F.3d 913, 915 (9th Cir. 2002) (arrestee detained and held for 12 days on warrant for his twin brother stated a claim for violation of substantive due process); *Wilson v. Lawrence*, 260 F.3d 946, 957 (8th Cir. 2002) (state official's reckless failure to follow an obvious lead that resulted in erroneous conviction and nine years of false imprisonment would violate due process); *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (plaintiff stated viable substantive due process claim where police department failed to check fingerprints and physical description, and ignored plaintiff's obvious mental incapacity, resulting in two years of false imprisonment).

### C.    Defendants Have Thwarted Mr. Savory's Right Of Meaningful Access To The Courts.

Mr. Savory's right of access to evidence is also found in his constitutionally protected freedom to pursue his freedom through court action and the clemency process.  The Supreme Court has repeatedly affirmed that the First and Fourteenth Amendments are themselves violated when a plaintiff is thwarted from presenting assertions of the violation of his fundamental constitutional rights to the judiciary.  *Christopher v. Harbury*, 536 U.S. 403, 412-22 (2002); *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974); *Procunier v. Martinez*, 416 U.S. 396 (1974); *Ex parte Hull*, 312 U.S. 546 (1941); *see also, Bell v. Milwaukee*, 746 F.2d 1205, 1262 (7th Cir. 1984).  A meritorious claim is presented under Section 1983 where the plaintiff can identify a

nonfrivolous and arguable claim for judicial relief that the defendant's actions have prevented

him from presenting.  *Christopher v. Harbury*, 536 U.S. 403, 414-15.

The nature of actionable restrictions range not only from physical barriers to filing of

papers with the court, *see, e.g., Ex parte Hull,* 312 U.S. 546, but also to barring access to crucial

evidence which would form the basis for redress.  *Bell v. Milwaukee*, 746 F.2d at 1261; *see also*,

*Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999); *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th

Cir. 1998);  *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997); *Chrissy F. v.

Miss. Dep't of Public Welfare,* 925 F.2d 844, 851 (5th Cir. 1991); *Ryland v. Shapiro*, 708 F.2d

967, 974-75 (5th Cir. 1983).

Defendant Lyons asserts that the "number of times Plaintiff has accessed the courts. . .

makes all too abundantly clear that Plaintiff's claim of denial of access to the courts is

insufficient."  (Lyons at 10.)  However, Lyons misses the point, as it is the *meaningful* quality of

access that counts, not the quantity.  No court has allowed DNA testing, which could both

demonstrate Mr. Savory's actual innocence and undermine the harmless-error analysis that

currently sustains his conviction.

The failure of Lyons to understand the concept of meaningful access can be demonstrated

by his efforts to place Mr. Savory in a Catch-22.  Defendants argue that Mr. Savory has already

accessed federal courts, and that these courts have ruled that he is not entitled to habeas relief.

Of course, Mr. Savory did not get habeas relief from the Seventh Circuit because the physical

evidence allegedly supported his guilt.  Yet, Defendants will not permit Mr. Savory to DNA test

the very evidence that the Seventh Circuit relied upon when conducting its harmless-error

analysis.  In order to break this circular logic, this Court should give meaning to Mr. Savory's

right of access to the courts by allowing him to test the evidence upholding his conviction.

**D.    Defendants' Refusal To Allow DNA Testing Have Prevented Mr. Savory From Pursuing Executive Clemency.**

Defendants' refusal to provide access to evidence has also thwarted Mr. Savory's ability to effectively pursue executive clemency.  In *Hererra v. Collins,* 506 U.S. 390, 416-17 (1993), the Supreme Court recognized that "[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted."  *Herrera*, 506 U.S. 390, 411-12.  As the Supreme Court recognized, executive clemency should be fail-safe, to protect against the inevitable circumstance in which the judicial system alone has not operated to secure an innocent person's freedom.  *Id.* at 415.

Lyons' only response to this count is to suggest that executive clemency is not constitutionally required.  (Lyons at 11.)  However, this position is once again circular and blind to the fundamental equities at hand.  As Judge Luttig correctly observes, given the *Herrera* majority's clemency analysis, it would be unfair for Mr. Savory to "be denied access to evidence in the government's hands that he could present to the executive in an effort to prevent a miscarriage of justice, after he has been told that it is the role of the executive, not the courts, to prevent miscarriages of justice which, because of finality, are no longer remediable through the judicial process."  *Harvey II*, 285 F.3d at 320 (Luttig, J.)  Defendants do not deny that Mr. Savory's clemency petition would be greatly strengthened if he could present exculpatory DNA test results, and thus this count should not be dismissed.

**E.    Defendant's Refusal To Allow DNA Testing Has Prevented Mr. Savory From Showing Actual Innocence, a Right Which in Turn Derives from Substantive and Procedural Due Process As Well as the Sixth and Eighth Amendments.**

Mr. Savory's right of access also derives from the constitutional prohibition on imprisoning the actually innocent.  Of course, there are two types of actual innocence claims -- a

*Schlup v. Delo* "gateway" claim, and a *Herrera v. Collins* "freestanding" claim. Defendants do not deny that Mr. Savory has a viable *Schlup* claim and this alone is enough to support Plaintiff's actual-innocence count. And despite Defendants' protestations, Mr. Savory's freestanding innocence claim also remains viable.

Initially, it is clear that proof of actual innocence would allow Mr. Savory to pass through the *Schlup* gateway. *See Schlup v. Delo*, 513 U.S. 298, 318 (1995) (habeas corpus relief proper where petitioner demonstrates constitutional error coupled with a reasonable probability of innocence). As discussed, both the Seventh Circuit and the Illinois Appellate Court have already concluded that there were at least two constitutional errors made at Mr. Savory's trial. *People v. Savory,* 435 N.E.2d 226, 232-33 (2nd Dist. Ill. App. Ct. 1982); *Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1988). Mr. Savory's conviction survived federal habeas review only because the errors were found harmless in light of other "damning" evidence of guilt -- the precise evidence Mr. Savory seeks to subject to DNA testing. *Savory v. Lane*, 832 F.2d at 1020. Since DNA testing has the potential to undermine the entire "harmless error" analysis that prevented his habeas petition from being granted, denial of testing violates Mr. Savory's right to present actual innocence under *Schlup*.

Furthermore, Mr. Savory also has a right to testing deriving from the right to present actual innocence claims recognized in *Hererra*. Contrary to Defendants' view, *Herrera* does not stand for the proposition that freestanding innocence claims are not cognizable as a matter of constitutional law. Rather, the *Herrera* majority assumed without deciding that executing an actually innocent person *would* violate the constitution, then found that Herrera himself did not have sufficient evidence of innocence to prevail under any standard, and so ultimately held that it would not be unconstitutional to execute him. *Herrera*, 506 U.S. at 417. *See also Ex Parte*

*Elizondo*, 947 S.W.2d 202, 206-07 (Tex. Crim. App. 1996) (discussing holding in *Herrera*). Far from closing the door on freestanding innocence claims, six Justices appeared to recognize the right. *See Herrera*, 506 U.S. at 419-420 (O'Connor, J. and Kennedy, J., concurring) (recognizing a constitutional right to make a "truly persuasive" showing of actual innocence as a basis for federal habeas relief); *id*. at 429 (White, J., concurring) (same); *id*. at 430 (Blackmun, Stevens, and Souter, J.J., dissenting) (same). The fact that *Herrera* was a death case makes no difference, as the Court was clear that an actual-innocence claim not involving a death sentence should be analyzed under the same rubric. *Id*. at 405 (rejecting "death is different" distinction).

In sum, this Court should find that Mr. Savory's right of access to evidence for DNA testing is a necessary component of his right not to be imprisoned where he is actually innocent. *See*, *e.g., Elizondo*, 947 S.W.2d at 205 (holding that incarcerating an actually innocent person violates Due Process Clause).

### III.  Plaintiff's Claim To A Federal Right Of DNA Access Has Not Been Ruled On By Any Court And Is Not Barred By *Rooker-Feldman* Or Res Judicata.

Contrary to Defendants' arguments, neither the *Rooker-Feldman* doctrine, nor res judicata, block Mr. Savory's claim for access to evidence. As explained below, *Rooker-Feldman* does not apply because Mr. Savory is not seeking review of a state court ruling, and his claims are not barred by res judicata because he could not have been expected to assert his present claims before state courts.

### A.  Mr. Savory's Claims Are Not Barred By The *Rooker-Feldman* Doctrine.

The Supreme Court recently made clear that *Rooker-Feldman* is confined to the narrow circumstance where a litigant seeks review of a state court ruling in a lower federal court, and does not apply simply because a litigant presses an independent claim that might also involve issues considered by a state court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, __ U.S.

__, 125 S.Ct. 1517, 1526-28 (2005).  As reflected in Seventh Circuit precedent, the *Rooker-Feldman* doctrine bars federal court review of claims *only* where the injury complained resulted from a state court judgment itself.  *Long v. Shorebank Development Corp.,* 182 F.3d 548, 555 (7th Cir. 1999) ("[W]e have recognized a distinction between 'a federal claim alleging injury caused by a state court judgment' and 'a federal claim alleging a prior injury that a state court failed to remedy.  A federal court is precluded from considering the former, but not the latter . . .' (internal citations omitted)).  In *Exxon Mobil*, the Supreme Court rejected decisions of lower courts, which also analyzed whether the two actions were "inextricably intertwined."  *Exxon Mobil*, 125 S.Ct. at 1523, n.1, 1526-28.

Since Mr. Savory does not seek review of a decision by a state court, *Rooker-Feldman* presents no bar to his Section 1983 action.  It is clear here that it is the Defendants that directly cause the injury Mr. Savory complains of by their denial of access to DNA testing.  While it is regretfully true that the Illinois Supreme Court failed to remedy to this wrong, this is not enough to trigger *Rooker-Feldman*.  *Long,* 182 F.3d  at 555.

**B.    Mr. Savory's Action For Access To Evidence Is Not Barred By Res Judicata.**

Res judicata also presents no bar to this court remedying Mr. Savory's unjust and continuing injury.  This conclusion is supported by four independent grounds: (1) the federal issues now before this Court were not addressed previously, and Mr. Savory could not have raised the federal claims in his state DNA motion; (2) federal law of the case understands the facts and evidence at issue differently than the state courts; (3) the parties to this action are distinct from prior litigation; and (4) Mr. Savory has a legitimate defense to res judicata since application of the doctrine in this case would work an inequity.

As a preliminary matter, res judicata does not apply here because the federal constitutional issues were not addressed in the prior judgment.  *Migra v. Warren City School*

*Dist. Bd. of Edu.* 465 U.S. 75, 84 (1984) (applying *res judicata* where petitioner did not claim

that state court would not have adjudicated federal claims); *Jones v. City of Alton*, 757 F.2d 878,

884 (7th Cir. 1985).  There should be no preclusive effect where:

> [t]he plaintiff was unable to rely on a certain theory of the case or
> to seek a certain remedy because of restrictions on the subject
> matter jurisdiction of the courts or restrictions on their authority to
> entertain multiple demands for multiple remedies or form of relief
> and the plaintiff desires in the second action to rely on that theory
> or to seek that remedy or form of relief.

Restatement (Second) Judgments § 26(1)(c).  Res judicata does not bar a later claim if the first

court could not have considered it.  *See Saxon Mortgage, Inc. v. United Financial Mortgage*

*Corp.,* 728 N.E.2d 537, 545-46 (1st Dist. Ill. App. Ct. 2000); *Airtite v. DPR Ltd Partnership*, 638

N.E.2d 241, 219 (4th Dist. Ill. App. Ct. 1994).

      The claims Mr. Savory asserts here were not raised below, nor could they have been.  It is

undisputed that neither the Illinois Appellate Court nor the Illinois Supreme Court addressed the

Mr. Savory's present federal constitutional claims.  Moreover, Mr. Savory could not have been

expected to raise his present claims before the state court in 1998 because of the limited nature

the state-law remedy and the lack of precedent concerning a federal right of access.

      The state DNA proceedings were entirely unconcerned with federal issues.  Indeed, Mr.

Savory initiated his state action pursuant to a "*motion* before the trial court that entered the

judgment of conviction for the performance of fingerprint or forensic DNA testing."  725 ILCS

116/3 (emphasis added).  The statutory provision, which only became effective January 1998

(the same month Mr. Savory filed his motion), is narrowly constrained to a "post-trial motion,"

with specific enumerated criteria for relief, and does not by its terms authorize Mr. Savory to

assert the full range of constitutional claims.  *Id.*  Indeed, the state-law remedy appeared at the

time to afford very limited process.  The perceived narrow scope of the state DNA statute is

demonstrated by the fact that (1) the Illinois Appellate Court has ruled that the statute does not even require the court to hold a hearing on the motion, *People v. Stevens*, 733 N.E.2d 1283 (4th Dist. Ill. App. Ct. 2000), *abrogated, People v. Savory*, 756 N.E.2d 804 (Ill. 2001), and (2) in Mr. Savory's case, the State itself argued that the Illinois Appellate Court "does not have jurisdiction over defendant's appeal because neither the Illinois Constitution nor the supreme court has provided for the appeal of final orders." *People v. Savory*, 722 N.E.2d 220, 222 (3rd Dist. Ill. App. Ct. 1999). Given this highly constrained process and state-court concern with basic procedural issues, it is clear that the state statute does not authorize broad jurisdiction to the Illinois Circuit Courts to entertain federal claims.

Furthermore, even making the unlikely assumption that federal claims were cognizable under the new Illinois process, Mr. Savory could not have been expected to raise them in January of 1998. *See*, *e.g.*, *Carver v. Secretary of Health and Human Services*, 869 F.2d 289, 292 (6th Cir. 1989) (refusing to apply res judicata to bar constitutional issues involving issues never addressed by the Supreme Court at the time of the first action); *Jackson v. DeSoto Parish School Bd.*, 585 F.2d 726, 729 (5th Cir. 1978) (refusing to apply res judicata where it would work an injustice to constitutional rights recognized after first action). At that time, federal law with respect to access to DNA testing had not even reached its infancy. The earliest reported decisions recognizing the right Mr. Savory now asserts date from the new millennium. *See Godschalk v. Montgomery County Dist.,* 177 F.Supp.2d 366 (E.D.Pa. 2001), *Bradley v. Pryor*, 305 F.3d 1287 (11th Cir. 2002), and *Harvey v. Horan*, 2001 WL 419142 (E.D.Va. 2001). Indeed, Congress did not specifically codify the right to DNA testing for federal prisoners until it passed the "Justice For All Act," which was signed by President Bush on October 31, 2004. *See* http://leahy.senate.gov/press/200410/103004A.html.

Next, it is beyond dispute that federal precedent in this case understands the significance of the critical physical evidence differently from the state courts.  After the Seventh Circuit identified constitutional errors in Mr. Savory's second trial, it specifically rejected the Illinois Appellate Court's harmless error analysis of those errors as "not supported by the record" because the Illinois Appellate Court relied heavily on the testimony of witnesses that the Seventh Circuit found had "significantly less probative force" than that ascribed by the state court. *Savory v. Lane*, 832 F.2d at 1019.  In reaching its own finding of harmlessness, the Seventh Circuit specifically cited as proof of guilt much of the physical evidence which Mr. Savory seeks access to test in this lawsuit -- the knife, hair, and bloodstained pants -- calling these items "damning" and providing necessary "corroboration" for other evidence presented in the case.  *Id.* By contrast, the Illinois Supreme Court did not cite the Seventh Circuit when it concluded that the blood-stained pants were not material to Mr. Savory's conviction.  *See People v. Savory*, 197 Ill.2d at 214-15.

Under the doctrine of law of the case, it is the Seventh Circuit's determination of the materiality of the evidence that governs this proceeding.  *Peoples v. United States*, __ F.3d __, 2005 WL 767062 (7th Cir. 2005) (when a federal court makes a determination it governs subsequent consideration of the case).  A ruling regarding the sufficiency or insufficiency of evidence is just the type of ruling to which the law of the case doctrine applies.  *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).  Since the understanding of the materiality of the critical facts and evidence differs in this case between state and federal courts, the doctrine of res judicata cannot apply and it is the Seventh Circuit's previous determinations regarding the importance of the physical evidence that must guide this Court in determining whether Mr. Savory has a right of access to testing.

A third reason to reject res judicata is that there is no identity of parties.  Certainly, Defendants Poynter and City of Peoria were not involved in Mr. Savory's state motion for DNA testing and have not raised a res judicata defense.  More importantly, Mr. Lyons was not a *party* to the prior action, rather he served as *counsel* for the People of the State of Illinois.  Without identity of parties, res judicata cannot apply.  *See Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 490 (1993).

Finally, Illinois courts refuse to apply res judicata where the results would work an inequity or where public policy demands that the doctrine be relaxed.  *Adams v. Pearson*, 104 N.E.2d 267, 440-41 (Ill. 1952).  *See also Moch v. East Baton Rouge Parish School Board*, 548 F.2d 594, 597 (5th Cir. 1977).  The Restatement (Second) of judgments, which Illinois follows[3], explicitly provides that res judicata should not be applied where (1) "the judgment in the first action was plainly inconsistent with fair and equitable implementation of a . . . constitutional scheme;" or (2) the case involves a "continuing or recurrent wrong;" or (3) "the policies favoring preclusion of a second action are overcome for an extraordinary reason such as an apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty."  Rest. (Second) Judgments § 26(1)(d), (e), and (f).  The equities in this case -- given the constitutional importance of DNA testing, the specific federal findings concerning the materiality of physical evidence in this case, and the fact that a potentially innocent man's freedom is at stake -- demonstrate that Mr. Savory meets all of the above criteria for not applying res judicata.

## IV.   Mr. Savory's Claims Are Not Barred By The Statute Of Limitations.

Tellingly, while Defendants all assert statute of limitations defenses, they do not agree on application of time bars to this case.  The Peoria Defendants argue that the statute of limitations bars only Mr. Savory's claim for denial of access to courts, and maintain that the claim accrued

---

[3] *See, e.g., Rein v. David A. Noyes & Co.,* 665 N.E.2d 1199, 1207 (Ill. 1996).

in 2001.  (*See* Peoria at 6.)  On the other hand, Lyons asserts that that all of Mr. Savory's claims

accrued at Mr. Savory's conviction in 1981.  (*See* Lyons at 4-6.)  Neither Defendant is correct,

however, because: (1) Defendants' refusal to provide Mr. Savory access to the evidence he seeks

to test is a continuing violation; and (2) Mr. Savory's claims are timely because they did not

accrue until January 27, 2004.  Finally, even if this Court finds Mr. Savory's claims accrued

earlier, the doctrine of equitable tolling is properly applied in this case to make this action timely.

Since the denial of access to evidence for DNA testing is a continuing violation, Mr.

Savory's claims are timely.  As the Seventh Circuit has observed, the statute of limitations

cannot be applied to "give [defendants] an easement across the Constitution."  *See Palmer v.*

*Board of Ed.,* 46 F.3d 682, 685 (7th Cir. 1995).[4]  In Mr. Savory's case the Defendants continue

to violate the Constitution and Mr. Savory's rights with each day he is denied access to evidence.

The fact that Defendants may have may engaged in prior constitutional violations does not

provide justification for their present and future constitutional violations.  *Palmer*, 46 F.3d at 686

(noting that "the fact that the employer has been violating the Constitution for a generation does

not permit it to commit fresh violations" (citations omitted)).  As the Seventh Circuit has noted, a

violation "continue[s] for as long as the defendants [have] the power to do something about

[plaintiff's] condition."  *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).

Even if the violation is not continuing, the statute of limitations still does not bar Mr.

Savory's action because the earliest his claims could have accrued is on January 27, 2004 -- the

date that Illinois Supreme Court denied Mr. Savory's leave to file a petition for a writ of

mandamus seeking final review of the DNA-testing decision.  Not until this date did Mr. Savory

---

[4] The court's analogy in *Palmer* is instructive:  "Suppose the school board had voted in 1980 to provide white pupils but not black pupils with school books.  A child whose parents neglected to sue during his first two years in school would not be doomed to another 10 years of education without books." *Palmer*, 46 F.3d at 685.

complete his state-based actions for DNA testing. Viewed in this manner, Mr. Savory's April 4, 2005 complaint unquestionably falls within the two-year statute of limitations.

Finally, even if all of the above is wrong, the applicable limitations should be equitably tolled. Here, the unique and extraordinary circumstances -- a trial found to suffer from constitutional error upheld by the Seventh Circuit on the basis of evidence of guilt that Mr. Savory seeks to put to test through DNA testing -- require equitable intervention. *See*, *e.g.*, *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 554-55 (7th Cir. 1996). Certainly, Mr. Savory exercised due diligence in pursuing his DNA claim. He sought testing in state court as soon as it was possible to assert such a claim, and he pursued a state remedy until January 27, 2004. Subsequently, Mr. Savory sought relief through Illinois' clemency process by filing a petition in November 2003 and presented his case at a hearing in January 2004. After a year without a ruling, Mr. Savory diligently turned towards this Court for relief. In light of the extraordinary power of DNA testing and Mr. Savory's due diligence, equitable tolling of the statute of limitations is appropriate to allow this Court opportunity to grant Mr. Savory relief from the cruel Catch-22 that now traps him.

## V.    Service Of Process Was Accomplished On Defendant Lyons.

Defendant Lyons' claim of defective service of process has no merit. Contrary to statements made in his motion, Mr. Lyons has been effectively served and has in fact acknowledged service.

As detailed in the attached declaration, Mr. Lyons was first served on April 5th, 2005 when Marcella Teplitz served Defendant's receptionist. (Teplitz Decl. ¶¶ 3-6, Exh. 1.) When Ms. Teplitz presented herself to Sue McGhee, a receptionist at Mr. Lyons' offices in Peoria, Ms. McGhee telephoned an unidentified person and inquired how she should handle the summons

and complaint.  (Teplitz Decl. ¶ 5)  After this inquiry, Ms. McGhee specifically informed Ms.

Teplitz that she was authorized to accept service on behalf of Mr. Lyons.  (Teplitz Decl. ¶¶ 5-6.)

This was effective service.  Fed.R.Civ.P. 4(e)(2) authorizes service personally or on "an

agent authorized by appointment or by law to receive service of process."  Fed.R.Civ.P. 4(e)(2).

Given Ms. McGhee's appointment as an agent to receive service, the complaint was effectively

served as of April 5, 2005.  *See, e.g., Echievarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24,

30-32 (1st Cir. 1988); *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.* 107 F.R.D.

665, 671-74 (S.D.Fla. 1985).

Furthermore, despite his protestations, Mr. Lyons himself has acknowledged service.

(Radke Aff., Exh. 2.)  When Plaintiff learned that Mr. Lyons was contesting service, counsel

sought to serve Mr. Lyons on two additional occasions.  On April 28, 2005, an Assistant State's

Attorney in Mr. Lyons' office, Lynden Schmidt, accepted service on Mr. Lyons' behalf.

(Holmes Aff., Exh. 3.)   More tellingly, however, is that after Ross Radke attempted to serve Mr.

Lyons at his home on May 4, 2005,  Mr. Lyons admitted, "You have served me at the office."

(Radke Aff.)  In light of  Mr. Lyons' own acknowledgment of service, the motion to dismiss for

lack of personal jurisdiction must be denied.

## VI.   Mr. Savory Has Asserted His Claim For Denial Of Access Against All Appropriate Parties.

The Peoria Defendants and Lyons have taken inconsistent positions regarding the

appropriate Defendants in this lawsuit.  Lyons asserts that Plaintiff has failed to join an

indispensable party who has possession of evidence. (Lyons at 13-14.)  Peoria Defendants, on

the other hand, maintain that despite possessing some evidence, they are not properly a party to

because they are merely following the direction of Lyons. (Peoria at 2-3.)  Peoria's argument

fails both because they do have possession of evidence at issue and because their scope-of-

authority argument is incorrect.  Defendant Lyons' indispensable party motion is moot given the amended complaint Mr. Savory has filed simultaneously this response adding the Clerk of the Peoria Circuit Court.

**A.    The Peoria Defendants Have Authority To Provide Access To Evidence For Testing.**

The Peoria Defendants are properly named for several reasons.  First, under Illinois Law, both law enforcement agencies and the clerk of the circuit court are required to preserve evidence for possible forensic testing.  725 ILCS 5/116-4.  Second, Peoria's suggestion that they have no authority to allow access or conduct tests is wrong -- Illinois statutes explicitly provide that municipal police departments have full authorities as "peace officers" within their jurisdiction.  65 ILCS 5/7-4-8.  The fact that responsibilities for prosecution is given to the State's Attorney by 55 ILCS 5/3-9005, does not mean that the Peoria Police department lacks authority to investigate crimes in their district and to collect, analyze, and retain evidence.  Finally, given Defendant Lyons' arguments regarding indispensable parties, it is apparent that the City of Peoria should be a party to this lawsuit.

**B.    Mr. Savory's Joinder Of The Clerk Of The Circuit Court of Peoria County Moot's Defendant Lyon's Motion Regarding Indispensable Parties.**

Defendant Lyons motion to dismiss for failure to join an indispensable party should be denied as moot.

Simultaneously with this response, Plaintiff filed an amended complaint adding the Clerk of Peoria County Circuit Court ("Peoria Circuit Clerk") as a Defendant in this action.[5]  As Lyons notes, some of the physical evidence at issue has been preserved by the Peoria Circuit Clerk.

---

[5] Out of an abundance of caution, the amended complaint also adds Peoria County as a defendant in light of *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).  While, unlike the plaintiff in *Carver*, Mr. Savory does not seek damages in this action, the county has been joined in light of Mr. Savory's request for attorney's fees.

Under Illinois law, the Peoria Circuit Clerk, and law enforcement agencies, have concurrent obligations to preserve evidence relevant to criminal prosecutions. 725 ILCS 5/116-4. Pursuant to this provision, the Peoria Circuit Clerk has maintained those items of physical evidence actually introduced at Mr. Savory's trial. 725 ILCS 5/116-4.

Lyons' assertion that Mr. Savory must join a Judge of the circuit court is plainly wrong. The statute explicitly gives custody over evidence to law enforcement agencies and Peoria Circuit Clerk -- not to Judges on the Tenth Judicial Circuit. Furthermore, Lyons is also incorrect when he states that only a Judge on the Tenth Judicial Circuit can order testing. Subsection c deals not with testing, but with procedures under which the Peoria Circuit Clerk may dispose of evidence. Mr. Savory is most certainly not seeking to *destroy* evidence. Furthermore, 725 ILCS 5/116-4 creates a *concurrent* duty for both law enforcement agencies and the Peoria Circuit Clerk, to maintain the evidence. Nothing in the statute suggests that law enforcement agencies need a judicial order to request the Peoria Circuit Clerk to provide evidence for testing.

Finally, because the Peoria Circuit Clerk is considered a non-judicial officer, *see, e.g., Pucinski v. County of Cook,* 737 N.E.2d 225, 228 (Ill. 2000); *County of Kane v. Carlson*, 507 N.E.2d 482, 486-87 (Ill. 1987); *see also McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972); *Norwood v. Solomon*, 431 F.Supp. 380, 382 (E.D. Mo. 1977), the prohibition on injunctive relief against "Judicial Officers" in Section 1983 is clearly inapplicable.[6]

### C.    City of Peoria and Poynter.

In light of the precedent identified by the Peoria Defendants, Plaintiff agrees that Gary Poynter, in his official capacity, and the City of Peoria are one in the same and has no objection to proceeding exclusively against the City of Peoria.

---

[6] Furthermore, even if the Peoria Circuit Clerk was a "judicial officer," or if Mr. Savory is required to join a Judge of the Tenth Judicial Circuit, this court could still order declaratory relief pursuant to 28 U.S. C. § 2201(a).

**VII.    Mr. Savory's Complaint Provides Adequate Notice Of His Constitutional Claims**

Mr. Savory's complaint provides more than adequate notice of his claims, and so Lyons'

motion for a more definite statement should be denied.  A complaint need contain only "a short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P.

8(a)(2).  A plaintiff need not recite in detail all of the facts underlying a claim to provide fair

notice the claim and the grounds upon which it rests.  *Swierkiewicz v. Sorema,* 534 U.S. 506, 512

(2002); *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Consequently, motions for more definite

statement are disfavored and are only appropriate for unintelligible pleadings.  *Radisson Hotels*

*Int'l, Inc. v. Westin Hotel Co.,* 931 F.Supp. 638, 644 (D. Minn. 1996); *Frazier v. Southeastern*

*Pennsylvania Tran.*, 868 F.Supp. 757, 763 (E.D. Pa. 1994); *Resolution Trust Corp. v. Gershman*,

829 F.Supp. 1095, 1103 (E.D. Mo. 1993).  There can be no question that Mr. Savory's complaint

provides sufficient detail to put Lyons on notice of his claims.

**VIII.   Oral Argument Requested.**

Pursuant to Local Rule 7.1(A)(2), Mr. Savory respectfully requests oral argument on the

pending motions.  Mr. Savory's claims concern vital issues related to his personal liberty and his

attempts to uncover the truth concerning the crime for which he has been imprisoned for more

than 30 years.  It also involves several weighty constitutional claims which are of first

impression in this Circuit.

**CONCLUSION**

For the reasons set forth more fully above, the Defendants' motions to dismiss have no

merit and should be denied.

Dated: May 27, 2005                  Respectfully submitted,

JOHNNIE LEE SAVORY, II

By:

 s/ Christopher Tompkins
Christopher Tompkins Bar Number: 06273167
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Tel: (312) 840-8686
Fax: (312) 840-8786
e-mail: ctompkins@jenner.com

Matthew M. Neumeier
Matthew M. Neumeier Bar Number: 06205788
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Tel: (312) 923-2749
Fax: (312) 840-7749
e-mail: mneumeier@jenner.com

Barry C. Scheck
Colin Starger (*on the Brief*)
THE INNOCENCE PROJECT
100 Fifth Avenue, 3rd Floor
New York, NY 10011
Tel: (212) 364-5361
Fax: (212) 364-5341

Steven A. Drizin
Jane Ellen Raley
Jeffrey Urdangen
NORTHWESTERN UNIVERSITY CENTER ON
WRONGFUL CONVICTIONS
Bluhm Legal Clinic
357 E. Chicago Ave
Chicago, Illinois 60611-3069
Tel: (312) 503-8576
Fax: (312) 503-8977

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2005, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

> Clifton J. Mitchell
> City of Peoria
> 419 Fulton #207
> Peoria, Illinois 61602
>
> William W.P. Atkins
> Assistant State's Attorney of Peoria County
> Peoria County Courthouse
> 324 Main Street, Room 111
> Peoria, Illinois 61602

> s/ Christopher Tompkins
> Christopher Tompkins Bar Number: 06273167
> JENNER & BLOCK LLP
> One IBM Plaza
> Chicago, Illinois 60611
> Tel: (312) 840-8686
> Fax: (312) 840-8786
> e-mail: ctompkins@jenner.com

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| JOHNNIE LEE SAVORY II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-2082 |
| | ) |
| KEVIN W. LYONS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF MARCELLA TEPLITZ

Marcella Teplitz declares as follows:

1.      I am a licensed Private Detective, Illinois License No. 115-001022.  I do business at 331 Fulton, Suite 525, Peoria, IL, 61602-1499 under the name Teplitz & Co.

2.      In April 2005, the law firm of Jenner & Block LLP hired me to accomplish service of process of a summons and complaint on the defendants to a lawsuit filed by Johnnie Lee Savory, II against the Peoria County State's Attorney Kevin W. Lyons, the City of Peoria, and the Chief of the Peoria Police Department, Gary Poynter.  The lawsuit was initially filed in the Peoria Division of the United States District Court for the Central District of Illinois and assigned Docket No. 05-1105.

3.      On April 5, 2005 at approximately 11:00 a.m., I went to the offices of the Peoria County State's Attorney Kevin W. Lyons, a defendant in the lawsuit, at the Peoria County Courthouse, 324 Main Street, Room 111, Peoria, Illinois 61602.

4.      At Mr. Lyons' office I presented myself to the receptionist on duty, Sue McGhee, and informed her that I had a summons and complaint to serve on Kevin W. Lyons.

1

5.     Upon learning that I had a summons and complaint to serve on Mr. Lyons, Ms. McGhee telephoned an unidentified individual for instructions regarding how she should handle the summons and complaint.  After completing the telephone call, Ms. McGhee stated that she was authorized to accept service on behalf of Mr. Lyons.

6.     Based on Ms. McGhee's representations, I left a copy of the Summons and Complaint with Ms. McGhee.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: _May 3, 2005_


_Marcella Teplitz_
Marcella Teplitz

# Exhibit 2

## AFFIDAVIT OF INVESTIGATOR

United States District Court        **CASE NUMBER** 05-1105

Northern District of illinois

Johnnie Lee Savory II      V.      Kevin W. Lyons et al.

|plaintiff/petitioner          **vs**        defendant/respondent|

I  Ross B. Radke        , depose and say that:

I attempted personal service of a summons in a civil action on Kevin W. Lyons at

his abode 7116 N. Windchime Court, Peoria, IL on 05/04/05 at 11:40 A.M.

I spoke to Mr. Lyons at this time and he identified himself to me as being the person

named in this action. He told me that "You have served me at my office!" and abruptly

closed the door in my face. I knocked again and again with no additional response.

I have since sent copies of this summons and complaint to Mr. Lyon's office and

abode on 05/05/05 via U.S.P.S. Mr. Lyons was subsitute served at his office on

04/28/05 through Lynden D. Schmidt, Civil Assistant States Attorney.

Illinois Licensed Private Detective #115-001766

**INVESTIGATOR'S SIGNATURE**

Subscribed and sworn before me, a notary public, this Fifth day of May 20 05

**NOTARY**

OFFICIAL SEAL
**DEBBIE L. RADKE**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2-6-2006

# Exhibit 3

## AFFIDAVIT OF PROCESS SERVER

United States District Court      CASE NUMBER __05-1105__

Northern Illinois Division      **JUDICIAL CIRCUIT**_____

Johnnie Lee Savory II    V.    Kevin W. Lyons, et al.

| [plaintiff/petitioner | **vs** | defendant/respondent] |
|---|---|---|

I ____Jeffrey Holmes____ , depose and say that:

**SERVICE:**   I served ____Kevin W. Lyons____

     **With the**   Summons In A Civil Action

     **By serving**   Lynden Schmidt/Civil Asst. States Attorney

           **[relationship/title]**

**DESCRIPTION: RACE/**White    **GENDER/** Female   **APPROX.AGE/** 40
**ADDRESS:** __Peoria County Courthouse, 324 Main St. Room 11, Peoria, IL__
**AT [ ] HOME**
   [X]**BUSINESS**    **ON** 04-28-05    **AT** 1:25 P.M.

**MANNER OF SERVICE:**
[ ] **By personally delivering copies to the person to be served.**
[X] **By leaving copies with the registered agent, officer, or agent of the corporation, or partnership found in the state.**
[ ] **By leaving copies at the usual place of abode of the person being served, with a person 13 years or upward, and informing that person of the contents thereof and further sending a copy in a sealed envelope with postage fully prepaid, addressed to the individual defendant at his usual place of abode. [Date copy mailed_____]**
[ ] **By posting copies in a conspicuous manner to the address of the person /entity served.**

**NON-SERVICE:** **After due search, careful inquiry and diligent attempts at the address listed above, I have been unable to effect process upon the person/entity being served because of the following reasons:**
[ ] **Unknown at address**      [ ] **Evading**
[ ] **Moved, left no forwarding**      [ ] **Address does not exist**
[ ] **Service cancelled by litigant**      [ ] **Return date expired**

Illinois Licensed Private Detective Agency

#117-001230

_____
**SERVER SIGNATURE**

**Subscribed and sworn before me, a notary public this** 28th **day of** April **20** 05

*"OFFICIAL SEAL"*
ROSS B. RADKE
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 11/01/2008